```
                    UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF OHIO
                           WESTERN DIVISION
```

James Ball, et al.,              )
                                 )    Case No. 1:04 CV 00578
    Plaintiffs,              )
                                 )
        v.                  )
                                 )
TRANSCON EMPLOYMENT CO., et al., )
                                 )
    Defendants.              )

Order

       Plaintiffs initiated this action by filing a complaint in August 2004, which was amended in April 2005, alleging that Transcon Employment Co., Inc. ("Transcon") and others violated the Employee Retirement Income Security Act of 1974 as amended, 29 U.S.C. §§1001-1461 ("ERISA"), and federal and state common law.  Plaintiffs' claims relate to alleged deficiencies with Transcon's self-insured health care plan.  After Plaintiffs initiated litigation, Transcon filed a claim with Kemper Indemnity Insurance Co. ("Kemper"), one of its liability insurance carriers, for coverage related to the lawsuit.  Kemper refused coverage.  In June 2005, Transcon filed an Amended Third-Party Complaint against Kemper alleging damages due to the insurance company's refusal to provide the company with coverage under Transcon's liability insurance package.  This matter is now before the Court upon Kemper's motion for summary judgment (Doc. 55) as to all charges asserted against it in Transcon's Amended

Third-Party Complaint.

I.                       <u>Facts and Background</u>

        Transcon is a "professional employer organization" ("PEO") that provides businesses with personnel and human resources management. Transcon operates, in part, by contracting out its co-employees to outside businesses for a fee. As part of its contractual obligations, Transcon promises to procure health insurance coverage for its co-employees.[1] In this vein, Transcon contracted with the business entity Plaintiffs in this case to procure health insurance coverage for the individual employee Plaintiffs.

        To carry out its obligation, Transcon developed a self-insured health care plan for Plaintiffs. Under this plan, both the business entity and individual employee Plaintiffs would pay premiums to Transcon. These premiums would then go to a third-party administrator ("TPA") selected by Transcon to handle health insurance claims made by employee Plaintiffs. Transcon, through an insurance broker, procured Meridian Benefit, Inc. ("Meridian") to serve as the company's TPA. Later, Transcon also procured Emerald Health Network, Inc. ("Emerald") and Consumer Health Solutions, LLC ("CHS") to serve as TPAs. None of these companies

---

[1] Since Transcon contracts out its employees to perform services for outside employers, it refers to members of its workforce as "co-employees."

chosen to act as Transcon's TPA was licensed to transact insurance business in either Ohio or Kentucky.

In November 2003, Meridian filed for bankruptcy, leaving Transcon with over $1 million in unpaid health insurance claims, and neither Emerald nor CHS have funds available to pay them.  As a result, the individual employee Plaintiffs in this action have been left with unpaid medical expenses ranging from $5,000 to $140,000.

A.  Plaintiffs' Original Complaint Against Transcon

Plaintiffs, upon learning that their health care coverage no longer existed, filed suit against Defendants alleging damages under ERISA and federal and state common law. Plaintiffs alleged that Transcon, along with the other named Defendants, breached its fiduciary duties to Plaintiffs, improperly denied Plaintiffs health benefits, and failed to comply with the terms of the health insurance coverage plan in violation of ERISA.  Moreover, Plaintiffs alleged common-law violations for breach of contract, negligence, and unjust enrichment.  Finally, Plaintiffs moved for a declaration of the rights of the parties and to pierce Transcon's corporate veil under the theory of alter ego.

B. <u>Transcon's Third-Party Complaint Against Kemper</u>

As the situation described above developed, Transcon notified one of its liability insurance carriers,[2] Kemper, of the possibility of litigation and made a claim for coverage under its "Staffing Errors and Omissions Package Policy" with the insurer. Kemper declined coverage on the basis that Transcon's policy specifically excluded coverage for any claims based on ERISA violations (Doc. 55, exhibit 4).

Subsequently, Transcon filed its Third-Party Complaint, which essentially alleges three claims against Kemper arising out of the above dispute. First, Transcon alleges that Kemper breached its contract with Transcon by "fail[ing] and refus[ing] to accept coverage and pay the claims" related to Plaintiffs' original action against Third-Party Plaintiffs. (Third-Party Complaint ¶54). Second, Transcon alleges that Kemper's decision to refuse coverage was made with "no basis in fact and in bad faith." (Third-Party Complaint ¶58). Third, Transcon alleges that Kemper fraudulently misrepresented to the company that claims related to the administration of the health plan would be covered under the policy, thus inducing Transcon to enter into the contractual relationship (Third-Party Complaint ¶¶61-62).

---

[2]Transcon also named The Ohio Casualty Insurance Company in its Third-Party Complaint. However, only Kemper has filed for summary judgment at this time, and this order only pertains to claims by Transcon against Kemper.

4

Third-Party Defendant Kemper denies any liability to Third-Party Plaintiff and has moved for summary judgment as to all of Transcon's claims. Kemper asserts that all of the claims brought by Plaintiffs against Transcon either sound in or have been preempted by ERISA and that the clear terms of Transcon's insurance policy exclude coverage for any claims arising from ERISA violations. The Court notes that, while Kemper has fully briefed its motion for summary judgment, Transcon has filed no motion in opposition. Instead, the original Plaintiffs in this action (Ball, et al.) have come forward to respond to Kemper's motion. Essentially, Plaintiffs argue that, while some of their claims clearly fall under ERISA, others are not preempted by the statute because they do not relate to an employee benefit plan. Moreover, Plaintiffs assert that the conduct underlying their tort claims took place before the plan came into existence. Thus, Plaintiffs argue that summary judgment is not appropriate as to all of Third-Party Plaintiff's claims against Kemper.

II.        <u>The Summary Judgment Standard</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ.

P. 56(c).  The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom.  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962).  "The mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)(emphasis in original).

   The Court will not grant summary judgment unless it is clear that a trial is unnecessary.  The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that can properly be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Anderson</u>, 477 U.S. at 250.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  <u>Id.</u>

   The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment.  <u>Poller v. Columbia Broadcasting System, Inc.</u>, 368 U.S. 464, 472 (1962).  "[T]he issue of material fact required by 56(c)... to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party exerting its

6

existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deprive the litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there us insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at

7

trial." Celotex Corp., 477 U.S. at 322. Significantly, the Supreme Court also instructs that "the plain language of rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. Id.; Anderson, 477 U.S. at 250. Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. Id. Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories and answers on file.

III.                    Analysis

   A.   The Breach of Contract and Bad Faith Claims

As previously noted, Transcon asserts that Kemper breached its contract of insurance by refusing to accept coverage and pay claims related to the litigation initiated against Transcon by Plaintiffs. Kemper, on the other hand, asserts that

8

all of Plaintiffs' claims in their Amended Complaint either sound in or are preempted by ERISA, and that Transcon's insurance policy explicitly exempts coverage for litigation based on ERISA violations.

The parties do not dispute that the insurance policy at issue expressly exempts potential ERISA violations from coverage. Section IV of Transcon's "Errors and Omissions Liability Coverage Form" states as follows:

> This Coverage Form does not apply to any claim:...(F) Based on or arising out of actual or alleged violation of: (1) The Employee Retirement Income Security Act of 1974.

(Doc. 56, exhibit 3).  Thus, Kemper will be successful in its Motion for Summary Judgment if each of Plaintiffs' claims against Transcon in its First Amended Complaint either sound in or are preempted by ERISA.  In their Motion in Opposition, Plaintiffs dispute only that Count Five of their First Amended Complaint, alleging that Transcon was negligent in its failure to properly look into the TPAs it procured to administer Plaintiffs' insurance plan and its failure to procure stop loss coverage for Plaintiffs, is preempted by ERISA.  If it is not, Kemper will have breached its insurance contract with Transcon by denying coverage under the policy.

ERISA clearly states that its provisions "shall supersede any and all State laws insofar as they may now or

9

hereafter relate to an employee benefit plan." 29 U.S.C.A. §1144(a). Early cases pertaining to the issue of preemption provided an extremely broad meaning to ERISA's preemption clause because the clause was "deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern." Pilot Life Ins. Co. V. Dedeaux, 481 U.S. 41, 46 (1987). Kemper asserts that this Court should decide its motion based on this expansive interpretation of the statute. However, since Pilot Life, the Supreme Court has narrowed its expansive reading of the preemption clause in order to better adhere to the objectives of ERISA. See N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995).

Accordingly, the Sixth Circuit Court of Appeals has determined that, in interpreting the scope of ERISA's preemption clause, "a court 'must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.'" Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp., 399 F.3d 692, 698 (6th Cir. 2005), (citing Travelers Ins. Co., 514 U.S. at 656). The Sixth Circuit stated that the objective of the ERISA preemption clause was to "avoid conflicting federal and state regulation and to creat a nationally uniform administration

10

of employee benefit plans." Id.

In Smith v. Provident Bank, 170 F.3d 609 (6th Cir. 1999), a participant in two ERISA plans sued the plans' former fiduciary alleging that the bank had wrongfully removed stock from his account. Aside from the ERISA claims, the plaintiff alleged claims based on various state common-law causes of action, including negligence. The court, utilizing the aforementioned standard based on ERISA's objectives, held that these state common-law claims were clearly preempted by ERISA because "Congress established the exclusive means by which fiduciary duties would be enforced." Id. Thus, the negligence asserted by Plaintiffs in this case regarding Transcon's failure to monitor potential TPAs or procure stop loss insurance would also be preempted under ERISA because Plaintiffs are merely asserting that Transcon breached its statutory fiduciary duties.[3]

All parties agree, however, that the ultimate test for preemption is whether the remedy sought in a common-law claim is also available through ERISA. If the remedy sought is available, the claim must be preempted, but if the remedy sought is not available, the claim may proceed. See Lion's Volunteer Blind Industries v. Automated Group Administration, Inc., 195 F.3d 803, 808 (6th Cir. 1999). Plaintiffs' secondary assertion that their

---

[3] 29 U.S.C. §1104(a) pertains to a fiduciary's duties under ERISA and sets forth a prudent man standard of care.

negligence claim against Transcon can proceed because the underlying conduct related to the action occurred before any employee benefit plan came into existence has been rejected by the Sixth Circuit.  See id., (citing Perry v. P*I*E Nationwide, Inc., 872 F.2d 157, 158 (6th Cir. 1989) (stating that the dispositive issue in determining whether a state-law misrepresentation claim was preempted by ERISA was "not the timing of the alleged misconduct, but the kind of relief sought.")).  Therefore, the Court must examine the remedy sought by Plaintiffs in their negligence claim against Transcon and determine whether that remedy is available to Plaintiffs through ERISA.

A careful analysis of Plaintiffs' negligence claim shows that it is preempted by ERISA because it seeks a remedy clearly available under the statute.  Paragraph 74 of Plaintiffs' First Amended Complaint states that "[a]s a direct and proximate result of Defendants' breach of duty, Plaintiffs have incurred damages including, without limitation, unpaid medical expenses as a result of Defendants' failure to perform their duties with reasonable care." (Emphasis supplied).  Thus, the only specified damages Plaintiffs seek through their negligence claim are unpaid medical expenses Plaintiffs have incurred as a result of Defendants' breach of duty.  This remedy is certainly available under ERISA.  29 U.S.C. §1132(a)(1)(B); see also

12

Penny/Ohlmann/Nieman, 399 F.3d 692 at 702, n. 5 ("Parties may not circumvent the ERISA statutory scheme through state-law causes of action against [fiduciaries or] non-fiduciaries to recover plan benefits.").

Plaintiffs argue that, despite the language of their Complaint, the damages they seek have only a remote connection to an employee benefit plan, and that state-law claims cannot be preempted where the "effect on employee benefits plans is merely tenuous, remote or peripheral." Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1276 (6th Cir. 1991). However, the cases Plaintiffs cite to support their assertion are clearly distinguishable from the facts in this case. For example, Plaintiffs cite to Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 452 (6th Cir. 2003), for the proposition that "a state-law action only peripherally affects a plan where a plaintiff refers to a clause in the benefit plan summary to support his employment discrimination claim, or where a plaintiff simply makes 'reference to specific, ascertainable damages' by citing a life insurance contract."

In Marks, a senior manager with AT&T Capital Corporation attempted to file a claim for benefits under an existing severance package. Marks based his claim on the allegation that he was constructively terminated from his position without just cause after his compensation was reduced

13

and his duties were altered.  When AT&T Capital rejected his claim for benefits under the severance package, Marks sued his employer for breach of contract and fraud.  Marks' complaint alleged that the defendants had "wrongfully, arbitrarily and capriciously rejected Mark[s]'s notice of termination...to avoid paying Marks more than $1.5 million that he would otherwise be entitled to under the AT&T plan."  Id. At 453.  For each state-law claim Marks alleged, he sought damages for "an amount presently undetermined but believed to exceed $1,500,000."  Id. The Sixth Circuit Court of Appeals found that, although Marks asked for damages roughly in the amount he was owed under the ERISA plan, his breach of contract claim was not preempted by ERISA, but only because the defendants' alteration of Marks's duties and compensation - acts having nothing to do with the benefits plan at issue - may have constituted "a breach of Marks's employment contract irrespective of the plan."  Id.  In the same vein, the other cases Plaintiffs cite, involving claims for fraudulent inducement and accountant malpractice, also center around wrongful conduct clearly separate and distinct from breaching fiduciary duties under ERISA.  See, e.g., Perry, 872 F.2d at 157.

     This case is distinguishable from those cited by Plaintiffs.  Plaintiffs allege that Transcon was negligent in procuring TPAs and setting up the employee health care plan.

14

Such conduct clearly had a dramatic impact on the employee benefits plan at issue and the relationship between the conduct and the plan cannot be said to be merely tenuous, remote or peripheral. Moreover, the unpaid medical expenses incurred by Plaintiffs seem to be the only harm suffered as a result of Transcon's alleged negligence, and are the only ascertainable damages to which Plaintiffs refer in their Complaint. Such damages are clearly available through ERISA. 29 U.S.C. §1132(a)(1)(B). Finally, Plaintiffs are not merely making reference to the plan to support a cause of action outside the scope of ERISA, like the plaintiff in <u>Marks</u>. Instead, Plaintiffs' negligence claim is based directly on Transcon's alleged breach of its fiduciary duties in developing and maintaining an adequate employee health care plan.

Thus, Plaintiffs' negligence claim against Transcon is preempted by ERISA, and Kemper did not breach its contract with Transcon by failing to cover the company under its insurance policy. For the reasons set forth above, Third-Party Defendant's Motion for Summary Judgment with respect to Third-Party Plaintiff's claim for breach of contract is well-taken. Moreover, because Kemper did not breach its insurance contract in its failure to cover Transcon under the terms of the plan, Transcon's claim against Kemper for bad faith must also fail.

      B.   <u>The Fraud and Misrepresentation Claims</u>

Transcon also alleges that Kemper represented that claims related to the administration of Transcon's health plan would be covered under its insurance policy. (Third-Party Complaint ¶¶60-63). However, Transcon has come forward with absolutely no evidence outside of the Complaint itself to support that such misrepresentations were ever made. Therefore, as a matter of law, Kemper's motion for summary judgment with respect to Transcon's fraud and misrepresentation claim is well-taken.

IV.                              <u>Conclusion</u>

For the reasons set forth above, Third-Party Defendant Kemper Indemnity Insurance Company's Motion for Summary Judgment as to all claims made by Third-Party Plaintiff Transcon Employment Company is hereby **GRANTED**.

**IT IS SO ORDERED.**

   <u>February 24, 2006</u>                <u>s/Sandra S. Beckwith</u>
        Date                       Sandra S. Beckwith, Chief Judge
                                 United States District Court